UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CHRISTA L. WILSON**,                                  Case No. 3:10-CV-2272

    Plaintiff,                                        Judge Jack Zouhary

    v.                                                REPORT AND RECOMMENDATION

**MARION CITY POLICE DEPARTMENT,**
   **et al.,**

    Defendants.                                       Magistrate Judge James R. Knepp II

## Introduction

Plaintiff Christa Wilson filed this action against the Marion City Police Department, MARMET Drug Task Force, Detective Daniel Ice, the City of Marion, the Marion County Sheriff's Department, and the Marion County Commissioners alleging assault, a §1983 civil rights violation, negligent infliction of emotional distress, intentional infliction of emotional distress, and defamation. (Docs. 1 & 9). Defendants filed a Motion for Summary Judgment (Doc. 20) to which Plaintiff responded (Doc. 23). Defendants filed a Reply (Doc. 25). This case was referred to the undersigned for a Report and Recommendation on the Summary Judgment Motion for the issue of qualified immunity only. (Doc. 13). The parties filed a joint stipulation of undisputed facts. (Doc. 16). For the reasons stated below, the undersigned recommends summary judgment be granted.

## Background

In 2009 and 2010, Detective Ice was assigned to the Marion-Metro Drug Enforcement Unit (MARMET). (Doc. 16, ¶¶ 2 & 5). His responsibilities included developing confidential informants whose duties involved buying illegal drugs from drug dealers, and directing investigations of suspected drug houses. (*Id.* at ¶ 5). Detective Ice and a supervisor from the City of Marion or the

Sheriff's department must approve of an informant before a person may be used in such a capacity. (*Id.* at ¶ 6).

In 2009, Detective Ice worked with a confidential informant known as CI 09-47 on about six to ten drug buys. (*Id.* at ¶ 7). On December 30, 2009, Detective Ice and other law enforcement agents were collaborating with CI 09-47 on a drug buy at 973 Paula Drive in Marion, Ohio. (*Id.* at ¶ 8). The first buy consisted of two bags of heroin from the supplier – CI 09-47 entered the house, purchased the heroin, left the house, and met the detectives. (*Id.* at ¶ 9). The second buy, about thirty minutes later, involved six bags of heroin. Kristen Wilson supplied the heroin. (*Id.* at ¶ 10). When the informant met with Detective Ice after making those buys, CI 09-47 told Detective Ice the name of the supplier and described her as "chunky". Detective Ice believes the informant gave him the name of *Christa* Wilson as the supplier. (*Id.* at ¶ 11). Defendants later learned Plaintiff Christa Wilson never lived on Paula Drive. (*Id.* at ¶ 8).

After being given the name by the informant, Detective Ice looked up Christa Wilson in the Ohio Law Enforcement Gateway (OHLEG); he did not enter the name "Kristen Wilson" into the database. (*Id.* at ¶ 12). The database returned an entry on "Christa Wilson" and showed a photo resembling the person CI 09-47 described to Detective Ice immediately after the buys. Christa Wilson's date of birth is June 9, 1984, she is five feet eight inches tall, and weighs 200 pounds. She has blonde hair, wears glasses, and is a resident of Marion, Ohio. (*Id.* at ¶ 13). Detective Ice then showed a color copy of Christa Wilson's driver's license photo taken from OHLEG to CI 09-47. The informant identified the person shown in the photo as the supplier. (*Id.* at ¶ 14).

Confidential informants are required to complete simple paperwork after drug buys. (*Id.* at ¶ 15). After each of the buys, the informant wrote "Kristen" as the name of the supplier. (*Id.* at ¶ 18).

The informant gave both forms to a law enforcement agent other than Detective Ice. Detective Ice did not see the completed forms until January 2011, approximately eight months after the indictment and arrest of Plaintiff. (*Id.* at ¶ 19). Detective Ice sent the results of his investigation to the Marion County Prosecutor's office. (*Id.* ¶ 20).

On April 1, 2010, the Marion County grand jury indicted Plaintiff on two counts of aggravated trafficking in drugs. A warrant issued the same day. (*Id.* at ¶ 21). During a traffic stop of Plaintiff's boyfriend, an officer learned that Plaintiff lived on Kibby Drive in Marion, not Paula Drive. (*Id.* at ¶ 22). An officer arrested Plaintiff on the evening of April 9, 2010. (*Id.* at ¶ 23). Plaintiff claimed innocence and stated she never sold heroin. (*Id.* at ¶ 25). Plaintiff was booked into the correctional center at 10:50 pm that night. (*Id.*).

The next day, April 10, 2010, Plaintiff's mother contacted the Marion Police Department to complain about her daughter's arrest, asserting her daughter was not a drug dealer. (*Id.* at ¶ 27). Detective Ice's superior, Lieutenant Gruber, began contacting a variety of individuals for information about the arrest, because he became concerned about the possibility of mistaken identity. (*Id.* at ¶ 28). Lt. Gruber and Detective Ice called the informant, whose description of the drug dealer matched Plaintiff's appearance. (*Id.* at ¶ 29). After viewing the surveillance video taken on December 30, 2009 and talking with another source, Lt. Gruber discovered the supplier was Kristen Wilson, not Plaintiff. (*Id.* at ¶ 30-31). According to OHLEG, Kristen Wilson is two years younger than Plaintiff, is two inches taller, weighs about the same, but has brown hair and no glasses. (*Id.* at ¶ 32).

A release request was faxed to the correctional center late Saturday night, April 10, 2010, and Plaintiff was released from jail around 1:00 a.m. on Sunday, April 11, 2010. The total time of

Plaintiff's detention from arrest to release was about 31 hours. (*Id.* at ¶ 33). On April 12, 2010, the Marion County Court of Common Pleas granted the prosecutor's motion to dismiss the charges against Plaintiff. (*Id.* at ¶ 34).

## Standard of Review

The court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). The plain language of 56(c) mandates the entry of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). To succeed on a summary judgment motion, there can be no "genuine issue as to any material fact". *Id.* at 323. The moving party bears the initial burden of proving the basis for summary judgment. *Id.* Then the burden shifts to the opposing party to demonstrate a genuine issue of fact for trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986).

## Analysis

This Report and Recommendation analyzes only the qualified immunity issue. The immunity argument hinges on the finding of probable cause for the initial warrant. The undersigned finds probable cause existed and therefore no constitutional right was violated. Some Defendants listed in the Complaint are not subject to suit. Moreover, Ohio state law provides immunity from liability to Defendants for their actions as described in the Complaint. Therefore, Defendants should be granted summary judgment.

*Immunity*

4

Plaintiff's allegations under 42 U.S.C. § 1983 are for malicious prosecution and false arrest. (Doc. 1, Ex. 1). The Sixth Circuit recognizes a cognizable claim of malicious prosecution under the Fourth Amendment, encompassing false prosecution and imprisonment. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).

Government officials performing discretionary functions "generally are shielded from liability for civil damages" as long as their conduct does not violate "clearly established statutory or constitutional rights". *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an immunity from suit rather than a defense to liability. *Mitchell v. Forsyth,* 457 U.S. 800, 818 (1982). The Supreme Court laid out a two-prong test for qualified immunity in *Saucier v. Katz,* 533 U.S. 194 (2001). First, "taken in the light most favorable to the party asserting injury", the court asks whether the facts of the case demonstrate the officer's conduct violated a constitutional right. *Id.* at 201. Second, the court must ask if the right was clearly established, and this inquiry must be undertaken in light of the specific case. *Id.* "The contours of the right" must be clear so a reasonable official would be aware his actions violate a constitutional right. *Id.* at 202. If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Id.* A plaintiff must satisfy both prongs of the test. *Id.* at 201. If either prong is not met, then the government actors are entitled to immunity. *Id.* The court need not examine the prongs in order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The goal of qualified immunity is to avoid "excessive disruption of government". *Id.* The ultimate burden of proof is on the plaintiff to show the defendants are not entitled to qualified immunity. *Rich v. Mayfield Hts.,* 955 F.2d 1092, 1095 (6th Cir. 1992). The "insulation from federal civil rights litigations" via qualified immunity

5

is broad, giving room for mistaken judgment by "protecting all but the plainly incompetent or those who knowingly violate the law." *Scott v. Clay Cnty.*, 205 F.3d 867, 874 (6th Cir. 2000).

*Section 1983 claim*

*Detective Ice*

A false arrest claim requires a plaintiff to demonstrate the arresting officer lacked probable cause to issue the arrest warrant. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). "The finding of an indictment, fair upon its face, by a properly constituted grand jury conclusively determines the existence of probable cause". *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006). If a grand jury indicts an individual after determining there is sufficient evidence to do so, there is no basis for a constitutional violation. *Id.* A Marion County grand jury indicted Plaintiff on two counts of trafficking in heroin on April 1, 2010. (Doc. 16, at ¶ 21 & Ex. C). An officer arrested Plaintiff pursuant to that indictment, and without contradictory information, on April 9, 2010. (Doc. 16, at ¶ 23). Therefore, probable cause existed for Plaintiff's arrest.

There is nothing to suggest that the indictment was not "fair upon its face" because there is no evidence of foul play involved. Plaintiff must show there was no probable cause to justify the arrest. *Barnes*, 449 F.3d at 716. Although Plaintiff suggests foul play on behalf of Detective Ice in her Response, the jointly stipulated facts do not support such claims. Factual stipulations are binding and conclusive – and the facts stated are "not subject to subsequent variation." *Christian Legal Soc. v. Martinez*, 130 S. Ct. 2971, 2983 (2010). This Court will not consider an argument contradicting a joint stipulation because factual stipulations are formal concessions with the effect of conceding a factual issue and dispensing with the need to prove the fact. *Id.* Narrowing disputes to the essential disputed issues is the primary function of stipulations – to challenge the stipulations would defeat

its purpose. *Estate of Quirk v. Comm'r of Internal Rev.*, 928 F.2d 751, 759 (6th Cir. 1991). Plaintiff's unsubstantiated assertions, such as claiming Detective Ice received the name "Kristen" from the informant but decided to search "Christa" in OHLEG, (Doc. 23, at 2-3), contradict the jointly stipulated facts and are offered without citation. Plaintiff asserts again and again Detective Ice purposefully entered the wrong name into the OHLEG database. (Doc. 23, at 2, 3, 6). Plaintiff argues Detective Ice's "self-serving claims" that he did not receive the name "Kristen" or see the post-buy paperwork are false. (Doc. 23, at 2). Yet, Plaintiff agreed in the joint stipulation of fact Detective Ice was not present during the completion of the forms and did not see them until January 2011. (Doc. 16, at ¶ 19). The argument that Detective Ice knew he was searching the wrong name in the OHLEG database is not well-founded because it contradicts the joint stipulation and is not supported by admissible evidence. Therefore, there is no evidence of a constitutional violation and Detective Ice is entitled to immunity.

### *City of Marion/Police Department*

If no officer deprived Plaintiff of any constitutional right, the claim against the county must fail. *Scott,* 205 F.3d at 879. A municipal body may not be held liable based on the actions of its officers, when its officers have inflicted no constitutional harm. *Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). Neither Detective Ice nor any other officer of the City of Marion violated Plaintiff's constitutional rights. Detective Ice is immune from the § 1983 claim and therefore so is the City of Marion and its police department.

### *Marion County Commissioners*

Plaintiff sues the Marion County Commissioners because they oversee and approve the budgets for training of officers. (Doc. 9, at ¶ 8). A claim against a supervisory body must fail unless

the plaintiff proves the supervisory body encouraged or directly participated in the misconduct causing the constitutional violation. *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009). Plaintiff provides no evidence connecting the county commissioners to the actions of Detective Ice. (Doc. 16). Therefore, the county commissioners are immune from the § 1983 claim.

*Marion County Sheriffs*

Under Ohio Law, a county sheriff's office is not a legal entity capable of being sued for purposes of § 1983. *Petty v. Franklin Cnty.*, 478 F.3d 341, 347 (6th Cir. 2007).

*MARMET*

Members of drug task forces are entitled to the same immunity from suit as other governmental bodies. *See Fannon v. Shewell*, 37 F. App'x 744, 745 (6th Cir. 2002). Therefore, unless Plaintiff demonstrates the actions of the task force were in violation of her constitutional rights, MARMET is free from liability. Similar to Detective Ice, no facts have been presented which support the conclusion that MARMET violated Plaintiff's constitutional rights. MARMET is immune from the § 1983 claim.

*State-law claims*

*Detective Ice*

Ohio Revised Code § 2744.03(A) grants employees of a political subdivision, including police officers, immunity from suits seeking damages for injury caused by "any act or omission in connection with a governmental or proprietary function." *See also Mayes v. Columbus*, 105 Ohio App. 3d 728, 741 (10th Dist. 1995). Immunity can only be stripped from an officer if the actions were "manifestly outside" the scope of employment or the acts were malicious, in bad faith, wanton, or reckless. Rev. Code § 2744.03(A)(6). Detective Ice is a law enforcement officer, and therefore

is entitled to immunity under § 2744.03. Further, there is no evidence to suggest that such immunity should be stripped from him. As mentioned above, although Plaintiff asserts Detective Ice intentionally entered the incorrect name in OHLEG and sought the indictment knowing the drug dealer's actual name, Plaintiff provides no admissible evidence supporting such claims. The lack of evidence and the fact that these statements contradict the jointly stipulated facts lead this Court to dismiss such arguments as groundless. Therefore, Detective Ice is entitled to immunity from Plaintiff's state-law claims.

*City of Marion/Police Department/Commissioners/Sheriff's Department*

Plaintiff's state law claims against city and county defendants are barred by Revised Code § 2744.02(A)-(B), which grants immunity to political subdivisions. The only exception possibly applicable is § 2744.03(A)(6), which withholds immunity if a state employee acts with "malicious purpose, in bad faith, or in a wanton or reckless manner". Rev. Code § 2744.03(A)(6). There is no indication any of these entities had any direct or indirect effect via either direction or training on Plaintiff's misfortune. Plaintiff presents no evidence to create a factual dispute on this basis. Therefore, these governmental entities are entitled to maintain their immunity on the state-law issues.

*MARMET*

MARMET is part of a multi-jurisdictional task force of law enforcement agencies organized under Revised Code. § 737.04, the goal of which is to allow police officers to work in multi-jurisdictional drug, gang, or career criminal task forces. Rev. Code. § 737.04. Immunity as it applies to police department operations "shall apply to the contracting political subdivisions and to the police department members when they are rendering service outside their own subdivisions pursuant

to contracts." *Id.* As such, MARMET is subject to the same test for immunity as the above entities. There is no evidence to suggest MARMET was malicious, wanton, or reckless in its actions. MARMET retains its immunity on the state law issues.

### Conclusion and Recommendation

Because Plaintiff has failed to create genuine, material issues of fact regarding alleged violations of her constitutional rights or demonstrate malice by Defendants, the undersigned finds all Defendants are immune from all claims. Accordingly, Defendants' Motion for Summary Judgment should be granted.

s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).